Filed 10/27/21  P. v. Ashker CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C091991 |
| Plaintiff and Respondent, | (Super. Ct. No. 86886) |
| v. | |
| TODD ASHKER, | |
| Defendant and Appellant. | |

While defendant Todd Ashker was serving a life sentence for killing a fellow inmate in Folsom Prison, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) (Stats. 2018, ch. 1015, §§ 1-4), which amended the law governing murder liability under felony murder and natural and probable consequences

1

theories and provided a new procedure under Penal Code section 1170.95[1] for eligible defendants to petition for recall and resentencing.

Defendant appeals from the trial court's order denying his petition for resentencing under section 1170.95, contending the trial court erred by summarily denying his petition after determining he failed to establish a prima facie case under the provisions of the statute. He argues the fact that he was the actual killer does not preclude him from statutory relief and that the jury could have convicted him on a natural and probable consequences theory because the jury was instructed on a general definition of implied malice, which, in his view, includes the concept of natural and probable consequences. He contends the trial court should have issued an order to show cause and allowed the petition to proceed for full consideration on its merits. Finding no merit to his contentions, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In 1988, defendant was charged with the murder of Dennis Murphy (§ 187) with a knife (§ 12022, subd. (b)) while in prison. A jury found him not guilty of first degree murder but guilty of second degree murder and found the weapon enhancement true. The facts underlying the crime, according to our unpublished opinion affirming his conviction (*People v. Ashker* (Apr. 30, 1992, C086886) [nonpub. opn.] at pp. 1-8 (*Ashker*)), were as follows:

Defendant and Murphy, a member of the Aryan Brotherhood prison gang, were housed in the same section of a maximum-security unit in Folsom Prison. The cell doors were electronically controlled from a control booth facing the cells. On shower nights, a guard would open a cell door to provide an inmate the opportunity to shower; the door would be closed when he left and then reopened when he returned.

---

[1] Undesignated statutory references are to the Penal Code.

2

In May 1987, an inmate quit his job cleaning up the cellblock in the evening, and recommended defendant as his replacement. The next night, as defendant mopped the tier's floor in front of Murphy's cell, Murphy's cell mate, Robert Tanner, returned from showering. At the time, Murphy was lying on his back across the bottom bunk, appearing to watch television. When the guard opened Murphy's cell door for Tanner to enter, defendant dropped his mop and ran past Tanner into the cell toward Murphy. Tanner quickly followed, pulled a mattress from the top bunk and placed it vertically over the cell door opening, partially obstructing the guards view into the cell.

The guards saw defendant make downward striking motions towards Murphy, following Murphy as he tried to move out of defendant's way. The guards did not see any weapon in defendant's hand. It appeared Murphy was taken by surprise.

Guards fired shots into the cell in an attempt to disable defendant; defendant and Tanner were not hit, but Murphy was shot in the shoulder. When guards finally entered the cell, they found Murphy on the floor beneath the bunk bleeding profusely. He had been stabbed at least 18 times. Defendant and Tanner were led away, and both appeared to be smirking; neither was injured. When asked by the guards what happened, Murphy answered, "Fuck you punk." He died a short time later.

A piece of green metal sharpened into a knife was found in Murphy's cell as well as a white piece of paper with a square piece of green metal stock from which the knife could have been cut. Defendant's palm print was on the knife blade, and his bloody fingerprint was on the white paper containing the metal stock. The metal used to make the knife and the stock may have come from metal shelving in the cell of two inmates, DeMarco and Lackey, who were housed in an adjacent section.

Defendant claimed he killed Murphy in self-defense. Several inmates testified on his behalf. Murphy apparently had a grudge against defendant over some discarded heroin and told another inmate that he planned to kill defendant. On a ruse, Murphy challenged defendant to a fist fight in his cell and defendant agreed; the fight was to

3

occur in the cell to avoid being shot by the guards in the yard. Murphy said he would arrange for defendant to get the job cleaning the cell block at night, and he would arrange for the fight to occur on a shower night.

Murphy then set out to get a knife and asked inmate Lackey to get the metal for him. After obtaining permission from inmate Wendell Norris, the leader of the Aryan Brotherhood, Lackey agreed. Norris helped fashion a partial knife out of the metal and sent it to Murphy.

Murphy received the knife and metal plate from which it was cut and sharpened the knife by rubbing it on the concrete floor. Murphy told Tanner, his cellmate, he intended to ambush defendant with the knife during the planned fight and kill him with it, later claiming self-defense. Tanner was to follow defendant into the cell after Tanner's shower and hold a mattress over the cell door opening to obstruct the guards' view and corroborate Murphy's story.

Tanner followed the plan and saw Murphy rise from his bunk holding the knife in his right hand and swing it at defendant when defendant entered their cell. While Tanner concentrated on holding the mattress in front of the doorway, he did not know that defendant had turned the knife on Murphy.

Defendant entered the cell to engage in a fistfight and took no weapon with him. He saw Murphy was armed with a knife, however, and he wrestled it from him after Murphy missed in his attempt to stab defendant. Defendant instinctively stabbed Murphy to stop him from fighting. He stopped stabbing Murphy only after Murphy stopped fighting, saying he had been shot.

Defendant said he did not intend to kill Murphy. Norris identified the knife he made for Murphy as the knife defendant used to kill him. The Aryan Brotherhood did not retaliate against defendant for killing Murphy, and another member of the gang testified defendant was not a member.

4

The prosecution presented the killing as a deliberate, premeditated, Aryan Brotherhood "hit" on Murphy. Defendant claimed he killed Murphy in self-defense against an ambush. The jury found defendant not guilty of first degree murder, but guilty of second degree murder with the personal use of a deadly weapon, the knife.

Defendant appealed his conviction, raising numerous issues, including that the trial court erred in failing to instruct the jury on the legal effect of unreasonable force used in self-defense and in giving the jury an abstract instruction defining implied malice. We rejected his arguments and affirmed his conviction, although we modified his 21-year-to-life sentence to run concurrently to a sentence he was serving in another matter.

On February 28, 2019, defendant filed a petition for resentencing under section 1170.95. Defendant checked various boxes on a form petition alleging that a complaint, information, or indictment was filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; that at trial he was convicted of first or second degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine; and that he could not now be convicted of first or second degree murder because of changes made to section 188 and section 189, effective January 1, 2019.

Defendant's form petition also checked a box alleging that he was convicted of second degree murder under the natural and probable consequences doctrine or under the second degree felony murder doctrine and that he could not now be convicted of murder given changes to section 188, effective January 1, 2019. He requested that counsel be appointed for him during the resentencing process.

In May 2019, the court appointed a public defender to represent defendant and requested briefing from the parties. In November 2019, the People filed a motion to dismiss the petition, arguing Senate Bill 1437 was unconstitutional, and that defendant had failed to make a prima facie showing that he was eligible for resentencing under section 1170.95. Defendant filed a reply, arguing Senate Bill 1437 did not

5

unconstitutionally amend or violate several previous propositions or the separation of powers doctrine, and that he had made the necessary prima facie showing for relief to warrant a show cause hearing under section 1170.95, subdivision (d). Defendant attached a copy of this court's decision affirming his convictions.

After considering the parties' briefing but before holding a hearing, the trial court denied the petition, finding defendant had failed to make the requisite prima facie showing. In so ruling, the court found the jury was not instructed on any theory of accomplice liability or felony murder. Instead, the jury was instructed with, among other things, CALJIC Nos. 8.10, 8.11, 8.20 and 8.30 on express and implied malice aforethought murder, and with CALJIC No. 25, on lying-in-wait murder as first degree murder. The court rejected defense counsel's argument that because the general jury instruction on malice aforethought murder based on implied malice contained " 'natural and probable consequence' " language, defendant was eligible for relief. Defendant, the court noted, had admitted he was the actual killer at trial, and he was not an accomplice to a target crime during which a different act of an accomplice lead to Murphy's death. Defendant appealed.

DISCUSSION

Defendant contends that the trial court erred in denying his section 1170.95 petition without issuing an order to show cause and holding a hearing because even though he admitted he was the actual killer and the jury convicted him of second degree murder based on express malice, the jury *could have* convicted him of implied malice second degree murder, which includes concepts related to the natural and probable consequences doctrine. We disagree.

A. *Murder Liability*

Ordinarily, a defendant may not be convicted of murder absent proof that he unlawfully killed a human being with either express or implied malice. (§§ 187, subd. (a), 188, subd. (a).) However, prior to Senate Bill 1437, which became effective

6

January 1, 2019, a defendant could be found guilty of murder without proof of malice under either the felony-murder rule or the natural and probable consequences doctrine. (*People v. Powell* (2018) 5 Cal.5th 921, 942; *People v. Gonzalez* (2012) 54 Cal.4th 643, 654.)

Under the felony-murder rule, a defendant could be convicted of murder when he or an accomplice killed someone while committing or attempting to commit an inherently dangerous felony. (*People v. Powell, supra*, 5 Cal.5th at p. 942.) A felony listed in section 189 qualified as first degree felony murder, while a non-listed felony qualified as second degree felony murder. (*Powell,* at p. 942.) Prior to Senate Bill 1437, the felony-murder rule did not require an intent to kill, or even implied malice, but merely an intent to commit the underlying felony. (*People v. Gonzalez, supra*, 54 Cal.4th at p. 654.)

Under the natural and probable consequences doctrine, "a person who knowingly aided and abetted a crime, the natural and probable consequences of which was murder or attempted murder, could be convicted of not only the target crime but also of the resulting murder or attempted murder. [Citations.] 'This was true irrespective of whether the defendant harbored malice aforethought. Liability was imposed " 'for the criminal harms [the defendant] . . . naturally, probably, and foreseeably put in motion.'[Citations.] " [Citation.] ' [Citation.]" (*People v. Munoz* (2019) 39 Cal.App.5th 738, 749, review granted on other grounds January 2, 2019, S252291.) The natural and probable consequences doctrine "is not an implied malice theory; the mens rea of the aider and abettor with respect to the [murder or attempted murder], actual or imputed, is irrelevant. [Citation.]" (*People v. Lopez* (2019) 38 Cal.App.5th 1087, 1102, review granted on other grounds November 13, 2019, S258175.)

B. *Senate Bill 1437*

Senate Bill 1437 was enacted "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent

7

to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The bill amended section 188, which defines malice, and section 189, which defines the degrees of murder to address felony-murder liability. (Stats. 2018, ch. 1015, §§ 2-3.) It also added new section 1170.95, which provides a procedure by which those convicted of murder can seek retroactive relief if the changes in the law would affect their previously sustained convictions. (Stats. 2018, ch. 1015, § 4.)

Senate Bill 1437 redefined malice under section 188 to require that a principal acted with malice aforethought. Now, section 188, subdivision (a)(3) provides in relevant part: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime."

Section 189 was amended to include new subdivision (e), which provides: "(e) A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer[;] [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree[; and] [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (Stats. 2018, ch. 15, § 3.)

Newly enacted section 1170.95 allows those "convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the

8

natural and probable consequences doctrine.  [¶]  (2) The petitioner was convicted of first degree or second degree murder following a trial . . . .  [¶]  (3) The petitioner could not be convicted of first or second degree murder because of changes to [s]ection 188 or 189 made effective January 1, 2019."  (§ 1170.95, subd. (a).)

"[P]petitioners are entitled to the appointment of counsel upon the filing of a facially sufficient petition (see § 1170.95, subds. (b), (c)) and that only after the appointment of counsel and the opportunity for briefing may the superior court consider the record of conviction to determine whether 'the petitioner makes a prima facie showing that he or she is entitled to relief.' (§ 1170.95, subd. (c).)" (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)

"If the trial court determines that a prima facie showing for relief has been made, the trial court issues an order to show cause, and then must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . .previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' (§ 1170.95, subd. (d)(1).) 'The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.' (§ 1170.95, subd. (d)(3).) At the hearing stage, 'the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' (§ 1170.95, subd. (d)(3).)" (*Lewis, supra*, 11 Cal.5th at p. 960.)

C.  *Prima Facie Showing*

Defendant stated in his declaration that he was convicted of murder under the natural and probable consequences doctrine or the felony murder rule, which would not have supported a murder conviction after the changes to sections 188 and 189.  The record of conviction, however, disproves his averment as a matter of law.  (*Lewis, supra*, 11 Cal.5th at p. 970 [trial court may consider record of conviction in determining whether

9

prima facie showing has been made under section 1170.95]; *People v. Woodell* (1998) 17 Cal.4th 448, 451 [record of conviction includes prior appellate court opinion].)

Our prior unpublished opinion establishes that defendant was convicted of second degree murder as the actual killer based on an express malice theory. As the trial court noted, the jury was never instructed on either the natural and probable consequences doctrine or the felony murder rule. Instead, the jury was instructed on premeditated murder, CALJIC No. 820, unpremeditated second degree murder, CALJIC No. 8.30, voluntary manslaughter, CALJIC No. 8.40, involuntary manslaughter, CALJIC No. 8.45, and justifiable homicide in self-defense, CALJIC No. 5.12. According to our opinion, the court specifically instructed the jury on second degree murder based on express malice but did not instruct the jury on second degree murder based on implied malice, and neither the prosecution nor the defense suggested the theory was applicable.

The record of conviction thus makes clear that the jury convicted defendant of second degree murder based on express malice, and that the jury was not instructed on felony murder or the natural and probable consequences theory. Defendant, then, as a matter of law, could not satisfy the requirements of section 1170.95 to show he was eligible for relief because he was not convicted of felony murder or murder as an aider or abettor under a natural and probable consequences theory. (§ 1170.95, subd. (a)(3).)

As an actual killer who harbored express malice, defendant was not eligible for relief under the statute. Other courts have also found similarly situated defendants ineligible for relief as a matter of law. (See, e.g., *People v. Cornelius* (2020)44 Cal.App.5th 54, 56-58, review granted, March 18, 2020, S260410 [a defendant who fatally shot his brother after an argument and was convicted of second degree murder while personally and intentionally using a firearm not eligible for relief under section 1170.95]; *People v. Tarkington* (2020) 49 Cal.App.5th 892, 899, review granted, August 12, 2020, S263219 [record of conviction showed the defendant not eligible for relief under section 1170.95 where he was the actual killer who personally used a deadly

10

weapon during the killing, and the jury was not instructed on aiding and abetting, the natural and probable consequences doctrine, or the felony murder rule].)

We reject defendant's claim that simply because the general definition of malice given to the jury in CALJIC No. 8.11, which defined implied malice as a killing that resulted from an intentional act, *the natural and probable consequences of which were dangerous to human life*, means that the jury could have convicted him on a natural and probable consequences theory. The fact that the definition of implied malice referenced the concept of natural and probable consequences does not mean that the jury was instructed on a natural and probable consequences theory of vicarious liability. (*People v. Lopez, supra*, 38 Cal.App.5th at p. 1102, review granted November 13, 2019, S258175 [the natural and probable consequences doctrine "is not an implied malice theory"].)

DISPOSITION

The order denying defendant's section 1170.95 petition for resentencing is affirmed.

 

 

_____
BLEASE, Acting P. J.

 

We concur:

 

 

_____,
RAYE, P. J.

 

 

_____,
HULL, J.

11